1

2

3

4

5

6

7

8                   IN THE UNITED STATES DISTRICT COURT

9                  FOR THE EASTERN DISTRICT OF CALIFORNIA

10  FREDDIE ELROD,

11              Petitioner,              No. CIV S-10-1628 LKK EFB P

12        vs.

13  G. SWARTHOUT,

14              Respondent.           <u>FINDINGS AND RECOMMENDATIONS</u>

15  _____/

16        Petitioner is a state prisoner without counsel seeking a petition for a writ of habeas

17  corpus pursuant to 28 U.S.C. § 2254.  Petitioner raises a federal due process and a state law

18  challenge to the decision of the California Board of Parole Hearings (hereinafter "Board") to

19  deny him parole at his first parole consideration hearing held on June 5, 2008.  The matter has

20  been fully briefed by the parties and is submitted for decision.

21        As discussed below, the United States Supreme Court has held that the only inquiry on

22  federal habeas review of a denial of parole is whether the petitioner has received "fair

23  procedures" for vindication of the liberty interest in parole given by the state.  *Swarthout v.*

24  *Cooke*, 562 U.S. ___, 131 S.Ct. 859, 862 (2011) (per curiam).  In the context of a California

25  parole suitability hearing, a petitioner receives adequate process when he/she is allowed an

26  opportunity to be heard and a statement of the reasons why parole was denied.  *Id.* at 861-62

1

1   (federal due process satisfied where petitioners were "allowed to speak at their parole hearings

2   and to contest the evidence against them, were afforded access to their records in advance, and

3   were notified as to the reasons why parole was denied"); *see also Greenholtz v. Inmates of Neb.*

4   *Penal*, 442 U.S. 1, 16 (1979).  For the reasons that follow, applying this standard here requires

5   that the petition for writ of habeas corpus be denied on petitioner's due process claim.

6   **I. Procedural Background**

7          Petitioner is confined pursuant to a 1996 judgment of conviction entered against him in

8   the Alameda County Superior Court following his conviction for second degree murder with use

9   of a weapon.  Dckt. 1 at 1.  Pursuant to that conviction, petitioner was sentenced to sixteen years

10  to life in state prison.  *Id.*

11         The parole consideration hearing that is placed at issue by the instant federal habeas

12  petition was held on April 30, 2008.  *Id.* at 61.  Petitioner appeared at and participated in the

13  hearing.  *Id.* at 63.  Following deliberations held at the conclusion of the hearing, the Board

14  panel announced their decision to deny petitioner parole for five years as well as the reasons for

15  that decision.  *Id.* at 182-93.

16         Petitioner first challenged the Board's 2008 decision denying him parole in a petition for

17  writ of habeas corpus filed in the Alameda County Superior Court.  Dckt. Nos. 12-1, 12-2.

18  Therein, petitioner claimed that the Board's 2008 suitability decision was not supported by some

19  evidence, that the Board improperly denied parole based primarily on the commitment offense,

20  that the Board's actions were arbitrary and capricious, and that he is not a "life prisoner" and

21  therefore not subject to the jurisdiction of the Board.  *Id.*  The Superior Court denied the petition

22  in a decision on the merits of petitioner's claims.  The court reasoned as follows:

23               The Petition is denied for failure to state a prima facie case for
                 relief.
24
                 Petitioner filed the Petition challenging the Board of Parole
25               Hearings' ("the Board") decision to deny him release on parole at
                 his initial parole consideration hearing.  Petitioner's claims [sic]
26               that there is no evidence supporting the finding that he currently

                                    2

poses a threat to safety and therefore the denial violates his due process rights.  Further, Petitioner asserts that the Board has no jurisdiction over his case as he is not a "life prisoner."  Petitioner's claims lack merit, and relief is therefore denied.

"The applicable statutes provide that the Board is the administrative agency within the executive branch that generally is authorized to grant parole and set release dates.  (§§ 3040, 5075 et seq.)  The Board's parole decisions are governed by section 3041 and Title 15, section 2402."  (*In re Lawrence* (2008) 44 Cal.4th 1181, 1201 (*Lawrence*).)  Penal Code[1] section 3041, subdivision (b) provides that the Board "shall" set a parole release date "unless [the Board] determines that the gravity of the current convicted offense or offenses, or the timing and gravity of current or past convicted offense or offenses, is such that consideration of the public safety requires a more lengthy period of incarceration for this individual . . . ."  And, as set forth in the regulation, "[r]egardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison."  (Cal. Code of Regs. tit. 15, § 2402, subd. (a).)

In *Lawrence, supra,* our Supreme Court concluded "that although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of *current* dangerousness to the public unless the record also establishes that something in the prisoner's pre-or post-incarceration history, or his . . . current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his . . . commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety."  (*Lawrence, supra*, at p. 1214, original italics.)

Therefore, "the Board of the Governor may base a denial-of-parole decision upon the circumstances of the offense, or upon other immutable facts such as an inmate's criminal history, but some evidence will support such reliance *only* if those facts support the ultimate conclusion that an inmate *continues* to pose an unreasonable risk to public safety.  [Citation.]  Accordingly, the relevant inquiry for a reviewing court is not merely whether an inmate's crime was especially callous, or shockingly vicious or lethal, but whether the identified facts are *probative* to the central issue of current dangerousness when considered in light of the full record before the Board or the Governor."  (*Lawrence, supra*, at p. 1221, original italics.)  The evidence in support of the Board's

---

[1]  All further statutory references are to the Penal Code unless otherwise specified.

3

decision "'must have some indicia of reliability,'" (*In re Scott* (2005) 133 Cal.App.4th 573, 591 (*Scott*), quoting *Biggs v. Terhune* (2003) 334 F.3d 910, 915) and "'must have some basis in fact [.]'" (*In re Elkins* (2006) 144 Cal.App.4th 475, 489, quoting *Scott, supra*, 133 Cal.App.4th at p. 590.)

The record reveals that the Board gave individualized consideration to all relevant factors. The Board's decision goes into detail as to the few favorable circumstance in support of parole. Despite the positive factors, the Board felt that these did not outweigh the factors tending to show unsuitability for release on parole. The Board based its denial on the commitment offense, his institutional behavior, Petitioner's current mental attitude, which included a lack of insight, Petitioner's limited vocation and self-help programming, and inadequate parole plans. It is readily apparent that the Board spent a significant amount of time conducting the hearing in order to evaluate Petitioner's danger potential. A review of the record reveals that some evidence supports all of the findings made by the Board. Petitioner's own statements and demeanor at the hearing support the Board's finding of lack of insight. In addition to Petitioner's lack of insight into the crime, the Board was also concerned about Petitioner's institutional disciplinary history, his inadequate parole plans and limited programming. Thus, like in *In re Shaputis* (2008) 44 Cal.4th 1241, the evidence in the record supports the conclusion by the Board that the circumstances of the crime continue to be predictive of current dangerousness because there is some evidence demonstrating that Petitioner present [sic] mental state, as well as his post conviction history when considered in light of the aggravated circumstances of his crime reliably continue to predict current dangerousness even after 11 years of incarceration.

The Board has discretion in the manner in which the specified factors relevant to parole suitability are considered and balanced, and the resolution of any conflicts in the evidence and the weight to be given the evidence are matters within the authority of the Board. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 677.) Only a modicum of evidence is required. (*Rosenkrantz, supra*, 29 Cal.4th at p. 626.) The Board's determination that Petitioner currently poses an unreasonable risk of danger to society if released took into consideration all relevant and reliable factors, was based on individualized consideration, and is supported by some evidence. Thus, Petitioner failed to state a prima facie case for relief on the first ground.

Petitioner's second ground for relief is that the Board's classification of him as a "life prisoner" is prejudicial because it enable to Board [sic] to conduct parole suitability hearings to which the Board lacks jurisdiction. Petitioner contends that when the Legislature enacted the California's Determinate Sentencing Act ("DSA") (section 1170 et seq.) in 1976, section 1168 was left

to apply to prisoners sentenced prior to 1977.  He further contends that he is not a life prisoner with a maximum sentence of life.  Therefore, he concludes, without citation to any legal authority, that the implementation of the DSA removed the Board's discretion of setting the parole release dates.  These claims lack merit.

Petitioner was sentenced to 15 years to life pursuant to section 190.  A sentence of 15 years to life is an indeterminate sentence, with a maximum potential term of life imprisonment.  (*See In re Jeanice D.* (1980) 28 Cal.3d 210, 215-219; *People v. Yates* (1983) 34 Cal.3d 648-652; *People v. Smith* (1984) 35 Cal.3d 798, 808-809.)  Furthermore, both straight life sentences and sentences of some number of years to life are indeterminate sentences not subject to DSA.  (*People v. Felix* (2000) 22 Cal.4th 651, 659 (*Felix*).)  Further, the determinate sentencing scheme is governed by section 1168, subd. (a), and the indeterminate sentencing scheme is governed by section 1168, subd. (b), (*People v. Felix, supra,* at p. 655).  Thus, contrary to Petitioner's claim, he was sentenced to section 1168, which does apply to his sentence.  Thus, the provisions of the DSA do not apply to the indeterminate 15-year-to-life sentence Petitioner received.  Therefore, Petitioner is a lifer and the Board has the authority to review his parole suitability and fix his release date once he is found suitable for parole release.  (*See* § 3041.)

Accordingly, the Petition is denied.

Dckt. 12-3.

Petitioner subsequently challenged the Board's 2008 decision in a petition for writ of habeas corpus filed in the California Court of Appeal for the First Appellate District.  Dckt. Nos. 12-4, 12-5.  The California Court of Appeal summarily denied that petition.  Dckt. 12-8 at 2. Petitioner subsequently filed a petition for writ of habeas corpus in the California Supreme Court.  Dckt. Nos. 12-6, 12-7.  That petition was also summarily denied.  Dckt. 12-8 at 4.  On June 25, 2010, petitioner filed his federal application for habeas relief in this court.

**II.  Standards for a Writ of Habeas Corpus**

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or

////

1  application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Park v. California*,

2  202 F.3d 1146, 1149 (9th Cir. 2000).

3        Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal habeas

4  corpus relief:

5                 An application for a writ of habeas corpus on behalf of a
person in custody pursuant to the judgment of a State court shall
6             not be granted with respect to any claim that was adjudicated on
the merits in State court proceedings unless the adjudication of the
7             claim -

8                 (1) resulted in a decision that was contrary to, or involved
an unreasonable application of, clearly established Federal law, as
9             determined by the Supreme Court of the United States; or

10                 (2) resulted in a decision that was based on an unreasonable
determination of the facts in light of the evidence presented in the
11             State court proceeding.

12        Under section 2254(d)(1), a state court decision is "contrary to" clearly established

13  United States Supreme Court precedents if it applies a rule that contradicts the governing law set

14  forth in Supreme Court cases, or if it confronts a set of facts that are materially indistinguishable

15  from a decision of the  Supreme Court and nevertheless arrives at different result.  *Early v.*

16  *Packer*, 537 U.S. 3, 7 (2002) (*citing Williams v. Taylor*, 529 U.S. 362, 405-406 (2000)).

17        Under the  "unreasonable application" clause of section 2254(d)(1), a federal habeas

18  court may grant the writ if the state court identifies the correct governing legal principle from the

19  Supreme Court's decisions, but unreasonably applies that principle to the facts of the prisoner's

20  case.  *Williams*, 529 U.S. at 413.  A federal habeas court "may not issue the writ simply because

21  that court concludes in its independent judgment that the relevant state-court decision applied

22  clearly established federal law erroneously or incorrectly.  Rather, that application must also be

23  unreasonable."  *Id.* at 412; *see also Lockyer v. Andrade*, 538 U.S. 63, 75

24  (2003) (internal citations omitted) (it is "not enough that a federal habeas court, in its

25  independent review of the legal question, is left with a 'firm conviction' that the state court was

26  'erroneous.'").  "A state court's determination that a claim lacks merit precludes federal habeas

6

1  relief so long as 'fairminded jurists could disagree' on the correctness of the state court's

2  decision."  *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011).

3  **III.  Petitioner's Claims**

4      **A.  Due Process**

5      Petitioner raises two claims in the instant petition.  In his first claim, petitioner contends

6  that: (1) the Board's decision that he was unsuitable for parole was not based on "some

7  evidence" in the record; (2) the Board's reliance on his "commitment offense alone" to find him

8  unsuitable for parole violated his state and federal right to due process; (3) the Board's decision

9  was "arbitrary, capricious and contrary to law" because the commissioners found him unsuitable

10 based on the commitment offense and "false allegations," and ignored "evidence of

11 rehabilitation;" (4) the "decision-making process and policies of the Board" violated his due

12 process protection against arbitrary and capricious decision making; and (5) the reasons given by

13 the Board to deny him parole are not supported by "a preponderance of evidence."  Dckt. 1 at

14 20-40.  These allegations essentially constitute a claim that the Board's 2008 decision to deny

15 petitioner parole for five years was not supported by "some evidence" that he posed a current

16 danger to society if released from prison, as required under California law and in violation of his

17 right to due process.

18     The Due Process Clause of the Fourteenth Amendment prohibits state action that

19 deprives a person of life, liberty, or property without due process of law.  A litigant alleging a

20 due process violation must first demonstrate that he was deprived of a liberty or property interest

21 protected by the Due Process Clause and then show that the procedures attendant upon the

22 deprivation were not constitutionally sufficient.  *Kentucky Dep't of Corrections v. Thompson,*

23 490 U.S. 454, 459-60 (1989).

24     A protected liberty interest may arise from either the Due Process Clause of the United

25 States Constitution "by reason of guarantees implicit in the word 'liberty,'" or from "an

26 expectation or interest created by state laws or policies."  *Wilkinson v. Austin*,  545 U.S. 209, 221

1  (2005) (citations omitted).  *See also Board of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  The

2  United States Constitution does not, of its own force, create a protected liberty interest in a

3  parole date, even one that has been set.  *Jago v. Van Curen*, 454 U.S. 14, 17-21 (1981);

4  *Greenholtz*, 442 U.S. at 7 (There is "no constitutional or inherent right of a convicted person to

5  be conditionally released before the expiration of a valid sentence."); *see also Hayward v.*

6  *Marshall*, 603 F.3d 546, 561 (9th Cir. 2010) (en banc).  However, "a state's statutory scheme, if

7  it uses mandatory language, 'creates a presumption that parole release will be granted' when or

8  unless certain designated findings are made, and thereby gives rise to a constitutional liberty

9  interest."  *Greenholtz*, 442 U.S. at 12).  *See also Allen*, 482 U.S. at 376-78.

10        California's parole scheme[2] gives rise to a liberty interest in parole protected by the

11  federal due process clause.  *McQuillion v. Duncan*, 306 F.3d 895, 902-03 (9th Cir. 2002)

12  ("California's parole scheme gives rise to a cognizable liberty interest in release on parole."); *see*

13  *Swarthout*, 131 S.Ct. at 861-62 (stating that the Ninth Circuit's determination that California's

14  parole law creates a liberty interest protected by the federal due process clause "is a reasonable

15  application of our cases.").  However, the United States Supreme Court has held that correct

16  application of California's "some evidence" standard is not required by the federal Due Process

17  Clause.  *Swarthout*, 131 S.Ct. at 861.  Rather, this court's review is limited to the narrow

18  question of whether the petitioner has received adequate process for seeking parole.  *Id.* at 863

19  ("Because the only federal right at issue is procedural, the relevant inquiry is what process

20  [petitioner] received, not whether the state court decided the case correctly.")  Adequate process

21  is provided when the inmate is allowed a meaningful opportunity to be heard and a statement of

22  the reasons why parole was denied.  *Id.* at 862 (federal due process satisfied where petitioners

23  were "allowed to speak at their parole hearings and to contest the evidence against them, were

24

25        ───────────────

26        [2]  In California, a prisoner is entitled to release on parole unless there is "some evidence"
of his or her current dangerousness.  *In re Lawrence*, 44 Cal.4th 1181, 1205-06, 1210 (2008); *In re Rosenkrantz*, 29 Cal.4th 616, 651-53 (2002).

1  afforded access to their records in advance, and were notified as to the reasons why parole was

2  denied"); *see also Greenholtz*, 442 U.S. at 16.

3      Here, the record reflects that petitioner was present at the 2008 parole hearing, that he

4  participated in the hearing, and that he was provided with the reasons for the Board's decision to

5  deny parole.  Pursuant to *Swarthout*, this is all that due process requires.  Accordingly, petitioner

6  is not entitled to relief on his due process claim.

7      **B.  State Law Claim**

8      Petitioner's second claim is that his classification as a "life prisoner" is contrary to

9  California law.  As a result of that invalid classification, he has been improperly subject to the

10  jurisdiction of the Board of Parole Hearings and is denied privileges and treatment given to non-

11  life prisoners.  Dckt. 1 at 40-57.  Petitioner argues that "it was the sentencing court's duty to

12  impose a term, after weighing the aggravating and mitigating circumstances, and Not some

13  administrative body who pirated this jurisdiction without statutory authority."  *Id.* at 41.  He also

14  argues that "the Board of Parole Hearings has no fundamental jurisdiction to fix the terms of

15  imprisonment for a prisoner sentenced pursuant to PC § 190 after November 8, 1978."  *Id.* at 55.

16      Petitioner's claim in this regard is based solely on alleged violations of state law.  A

17  claim that state law was violated is not cognizable in a federal habeas proceeding.  *See Wilson v.*

18  *Corcoran*, 562 U.S.___, ___, 131 S. Ct. 13, 16 (2010); *Rivera v. Illinois*, 556 U.S. 148, ___, 129

19  S. Ct. 1446, 1454 (2009) ("[A] mere error of state law . . . is not a denial of due process.")

20  (quoting *Engle v. Isaac*, 456 U.S. 107, 121, n. 21 (1982) and *Estelle v. McGuire*, 502 U.S. at 67.

21  The decision of the California Superior Court rejecting this claim is not contrary to or an

22  unreasonable application of United States Supreme Court authority.  Accordingly, petitioner is

23  not entitled to habeas relief.

24  ////

25  ////

26  ////

9

**IV.  Conclusion**

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

In any objections he elects to file, petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case.  *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant); *Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc) (prisoners are required to obtain a certificate of appealability to review the denial of a habeas petition challenging an administrative decision such as the denial of parole by the parole board).

DATED:  January 4, 2012.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE